May I please the court, your honors? Van Arbonides on behalf of Benjamin Leo Zarn, and I'm here from the Federal Defender Office in the Great Falls Branch. The foundation question, your honors, is whether the receipt of child pornography statute under 18 U.S.C. 2252A sub A2 reaches mere browsing. I mean, that is really what we're here for. And I note two footnotes to this that I'd like the court to be aware of, please. And that is, first of all, that the viewing statute under 2252A sub A5 was implemented on October 8th of 2008, roughly two and a half months prior to trial. And, you know, the government and I had discussions about that issue, and it was plead a receipt or go to trial. And we had really no choice. Counsel, is this an issue of first impression? Well, as far as the, I would say yes. I would say yes, your honor. That's very perceptive. Because it is very different from the triumvirate of cases that kind of have directed our district courts, such as Tucker in our sister court in the Tenth Circuit, such as Rahm, who followed the definition of dominion and control, as well as Kuczynski. This person was merely viewing. There was no evidence ever. And, in fact, the government readily concedes that Mr. Zarn never downloaded any of the images knowingly and never intended to download those images. And yet we went to trial on receipt. The government decided to go for the home run. Receipt, which has a bigger bang for the buck, a five-year minimum, as opposed to the guideline for viewing, which is 33 to 41 months. And so Mr. Zarn essentially, by being convicted, is having to do a five-year minimum because of that. If the court does affirm this case, then, number one, it could possibly be rendering moot the viewing statute. Because it could give, theoretically, card block for the government to decide to charge under receipt, or at least try to charge under receipt, based upon the facts of this case. In addition, the government really spends a lot of time talking about the issue of he sought out this trial pornography. It was on his monitor. He viewed it on the monitor. Well, a monitor is not considered physical media. Physical media is something with essentially a computer brain, something you can save, like a hard drive or a floppy, or in today's world, a thumb drive. Counsel, in your view, is viewing a lesser included offense of receipt? Well, following the Davenport paradigm, if you will, and because Congress decided to put, within the same sentence, viewing with possession, then I would say that it very well could be argued that, yes. It's a difficult case for me because of those nuances. Yes, Your Honor. Yes, Your Honor. But if we can focus on whether Mr. Zarn exercised opinion and control, you know, the court, even the court was in a conundrum with this case. And if you read the briefs, it had trouble reconciling Kuczynski and Rahm and even invited the government to at least brief the issue of the fact that there was really no evidence to enhance him on that sentencing because of Kuczynski and because of Rahm, because our client never exercised any opinion and control and had no knowledge. And so, again... What do you mean by he had no knowledge? No knowledge of what Tucker and Rahm focused upon. No knowledge of the cash. No knowledge that, as he was viewing this, it was automatically being saved. It was automatically being downloaded. Whereas, as we know, distinguishably, Tucker and Rahm, they accessed the cash. They had that knowledge about the cash. Hence, they did exercise, very much so, opinion and control. Kuczynski, a little different because he saved it. He saved, what was it, 110 images, I believe, in a folder, 94 in a folder, I guess, 16 in a recycle bin, which essentially was deleted from the folder. But, nevertheless, Zarn did none of this. He just simply, well, not simply, but he viewed this and... The backup address is used to access the images. Wouldn't that indicate possession and control? I respectfully know because knowing receipt has to have, within the equation, dominion and control. But he had the ability to print it, to store it. He could have done all those things. The fact that he didn't know that it was being automatically saved to the cash doesn't mean he didn't have dominion and control at the time he was viewing it, does it? Well, but you have to have knowledge about that. For instance, you have to know that you can right-click on the image to save it or email it. There's no evidence that this person had any of that knowledge. This person was just a janitor watching child porn at 4 in the morning while he was taking a break on someone else's computer at Northwest Energy. He didn't know how to right-click. He didn't know that left-clicking, like in the Tucker case, could enlarge the image. He didn't know any of that. And, therefore, even though he could have had that capability, Ron directs us that, and the government says, you know, writes part of the question or part of the sentence, but not the full sentence. A person can receive and possess without downloading if he seeks it out. And that is what the government and the district court really grabbed onto. But then it says, and, a conjunctive, and exercise dominion and control over it. And that is the key. That is really the essence here, because this person did not exercise dominion and control, because a screen is not electronic media. Now, exercise dominion and control may be different from have dominion and control. Is there a distinction that's relevant to this case between those two concepts? Well, one is active. One is the active. One is essentially passive. Potential for the activity, sure. A passive voice, if you will. Well, the potential for being active, but until you actually send it, until you have dominion and control, but you don't exercise it. Are you saying that if he has it but doesn't exercise it, he doesn't fall under the statute? At least the case law, at least the triumvirate of three cases show that it has to be exercised, because these three people exercised it. And some of the cases that I shepherdized, which I won't get into, had trouble with that, but really focused on the active exercising of that. Now, why isn't it sufficient for exercise of dominion and control that he searches it, he calls it up, and then when he's finished looking at it, he gets rid of it and searches and picks up another one? Why is that not exercise of dominion and control? Well, the government created the statute of exactly that, and they placed it not under the receipt and distribution section of 2252A, but rather under possession, because they wanted a lesser, well, I would submit the intent was a lesser penalty for doing this kind of thing, because what you're going to end up doing is punishing, you're going to punish the czars of the world harsher for being unsophisticated users, who don't know how to right-click or left-click or save or do all that, versus the sophisticated user who can download it into a thumb drive, do all the acts that you would think would ensue a harsher penalty, but they can just simply get caught with a thumb drive or a floppy disk and just be caught with possession. Whereas Mr. Zarn, who's viewing it, the unsophisticated user who doesn't know what a thumb drive is, hypothetically and certainly not in the evidence, is going to get banged for five years, and we're going to give the government card block to simply charge for receipt. As you may know, there have been some arguments that, in fact, we've got a drafting mistake that has the higher penalty for receipt than for possession. In fact, I think it was a drafting mistake, but there it is. Exactly, and if you really look at it, I'm glad that the court mentions this. I did not want to go into it, but if you look at it logically, there's a lot more mens rea and actus rea if you possess it than if you simply receive it, and yet receipt is a five-year minimum and a 20-year maximum, and possession is zero to ten. But we can't rectify drafting mistakes. We have to apply the law. It's written, even if it's a drafting mistake. Yeah, well, Andrew, we dealt with that. The game's over on that question, even if it may well be a drafting mistake. Well, and that's why the government could have gone for the safe bet. At some point, you might hope for some prosecutorial judgment. Well, I will leave that up to this court. But we try very hard to do anything we can, and, in fact, the government indirectly conceded there was no dominion in control because they dismissed possession. They said we can't charge them with possession because there's no dominion in control. But conversely, they did not, even with a request from counsel, think about the viewing statute, which we could have either superseded or they could have dismissed and reindicted, and obviously it would have been up to my client, but it would have been, I think, a slam dunk for them. Why don't we hear from the government? We're over time, but we'll give you a chance to respond. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Marcia Hurd, and I'm an AUSA from the District of Montana at the Billings Office. And I gather that you are now allowed to travel freely about the country. We are. How nice. We like that. And were you trial counsel for this case? I was. So you can tell us what the prosecution decided. I mean, if I had charged the viewing statute, which wasn't in effect at the time that Mr. Zarn was doing these activities from the year of 2006 through November of 2007, the first motion I get is a motion to dismiss. So that argument just doesn't hold it in this case. I mean, the issue is this is an electronic context. This is so different than some of the old cases that we dealt with where we were handling videotapes and Polaroids and things like that. And the language in ROM, we all agree, is the most instructive language here, where it says, in the electronic context, a person can receive and possess child pornography without downloading it if he or she seeks it out and exercises dominion and control over it. That's the critical point. That's the critical point. Whether or not, in your view, how did Mr. Zarn exercise dominion and control? Exercise being the operative word. Exactly. Mr. Zarn, and there are no facts in the record to support the allegations here that he didn't know about right-clicking and left-clicking. There's nothing one way or the other, is there? No, there isn't. But if he has to do that, that would be your burden to show. Exactly. So the fact that it's not there, that's your problem. If, in fact, right-clicking, sending on is necessary, you lose. Absolutely. That's absolutely accurate. What the district court found, which are the findings of fact that, in this case, you must give discretion to or look at for clear error, is that these activities occurred by Mr. Zarn from 2006 to November of 2007. So we're talking about a period of almost two years. He used four separate computers, two at his home, one belonging to himself, one belonging to his father, and two different computers at his workplace on a number of different occasions to commit these same activities. So he basically uses the Internet on four different computers, two different locations. The district court found that he sought out specifically, located and accessed those images by use of, as you noted, the search terms. When one types in the search term, you know, young girl panties or little lolitas, one's going to get child pornography websites that one can then go see. The district court also found that he viewed child pornography during numerous separate viewings on all four of those computers. This was not like a one-time, a break in the middle of the night at work kind of situation. The district court found that the sites were obtained and opened by deliberate action on the part of Zarn, put in the specific search terms, picked the website he wanted to go to, looked at specific images. That he viewed a substantial number, perhaps over a thousand of the child pornography images that were displayed to him, and then would click off of those. That some of the sites he visited that contained child pornography, he visited several different times, both from the home computer on more than one occasion and the work computer on more than one occasion. Counsel, was the argument made at trial by the defense that the actions taken were not sufficient to demonstrate exercise of control? Yes. It was made to the jury? It was made to the court. This was a bench trial. Oh, it was a bench trial. It was made to the court. Yes. As a trial or fact. Exactly. There really just wasn't any disagreement here about what the facts were. And this all turns on the definition of receipt or exercises dominion and control. And I think in the electronic age, the thing that, if I can just finish briefly, the district court also found as a finding of fact, that Zarn had the power to print, enlarge, copy, email, save, or otherwise manipulate the child pornography, and that he exercised dominion and control over those images by closing out websites with child pornography moving from one to another on numerous occasions. So in the electronic context, it's really hard to argue that you haven't received something when we're using the Internet. If I want to check out your judicial records on child pornography cases, I will go to Westlaw. I will look at the cases that you've decided, like the Olander case recently, and say, okay, what is the feeling of this panel? How could I not have received those cases? Even if I don't download them, even if I don't print them, I've read them, and I understand what it is within that case. Well, of course, words have different meaning in different contexts, and I have to say that even though we held in Olander that the statute means what it says, draft, new mistake, or otherwise, I'm reluctant to have an expansive definition of receipt given the harshness of the penalty that is disproportionately harsh, in my view, to possession. So receipt in that context, boy, that's a, it seems to me that there's sufficient reason to make sure that receipt has at least as restrictive a meaning as it can have, consistent with, you know, you don't do violence to the word. Exactly. It's also hard, though, to argue in electronic context that if I want to buy a new kayak, and I don't want to wait for the Eddie Bauer catalog to come in the mail, I do the Google search. I get the Eddie Bauer catalog. I go to the page on kayaks. I place my order. They're happy with my money. I'm happy with my new kayak. How have I not received that catalog? My mother sends me an email. How have I not received that email, received that material, exercised dominion and control over it? If I want to reply back, I can. I don't have to save it. Counsel, it's obvious that the computer area is causing us some difficulties, and it happens to jurors also. It may not be known, but Rahm was actually tried for the first time, two floors above us here in my courtroom, and I presided over the first trial. And it was a hung jury because the jury was definite. His defense was, I possessed it in Nevada, and I possessed it up in Canada, but then I deleted it and got rid of it. And so when I came into the Western District of Washington, I didn't have it anymore. And it was still in his cash, but the jury was sufficiently confused, or at least some of them were, that some of them would not convict. The case was shipped to Nevada, and there it is. But these are difficult concepts for jurors. They're difficult concepts for courts, and it becomes an extra difficult concept when prosecutors are perceived as piling on individuals and giving exceptionally long terms, mandatory or otherwise. I understand that. And the whole issue of prosecutorial discretion really couldn't come into play here because of the facts that we all agree occurred here, which is he didn't take any steps to download. He didn't save to a thumb drive or save to a CD. And it made, then, the issue of possession and moving things from one item to another very difficult. The viewing statute, as I said, was not in effect at that time. And so this was the charge. And this is different than a case where you might have a person who does a one-time kind of thing. This is not a stumbling into child pornography. This is a knowing receipt over a period of almost two years from four computers, over 1,000 images in the middle of the night on somebody else's computer when nobody was there, when they had accidentally left a computer on and he could access. And so I think you can narrow. This doesn't have to be a huge published first impression decision. I think the facts of this case are very specific to why receipt was the appropriate charge here and why he was guilty of receipt from the findings that the judge made. I don't think you have to have a published opinion here that says, in every context, looking at child pornography on the Internet is always receipt. But on these facts, this length of time, the deliberate searches, the way he went from site to site and went back. How do we limit it then? I understand the facts of this case, but how do we limit the concept of receipt if all that is necessary for receipt is you enter into a search term, you find it, you bring it up on the screen, and after you're finished looking at it, you go on to something else and look at the L.L. Bean catalog. Why is that not receipt? I understand that it's only once instead of multiple times, one image instead of multiple, but why is that not receipt under your argument? It is receipt, Your Honor. So why are you saying we don't need to write an opinion on this question? Well, I'm not saying you don't need to write an opinion. What I'm saying is that I think you can look at the broadness of the facts of this case, and it's an easy receipt case because of the broadness of the facts. And then just trust you not to prosecute the cases where it happened only once? Well, I think that you have to give us some credit for having prosecutorial discretion. Well, you know, you probably remember the Ziegler case. I do remember the Ziegler case. And that does not strike me as a wise exercise of discretion. Well, and that's something we're going to have to continue to disagree about, Your Honor. Well, as I recall the Ziegler case, he looked at child porn twice. It was cached without his knowledge. The district judge sentenced him to probation because he wasn't a pedophile. We can disagree as to the exercise of discretion by your office. It's not now before us. Right. But if you ask me to trust prosecutorial discretion, I have no choice but to say you get to do it, but I don't trust. And that's fair. That certainly is your position to be able to do that. But if we look at. . . I have no control. You guys get to do it. Counsel, Judge Haddon did have Rahm in front of him and used Rahm as a guideline for this issue of exercising dominion and control, correct? Absolutely, he did. We both tried very hard, I think Van and I did, to brief him on what the state of the law was and how it was that Rahm applied to the facts in this case. He had it in front of him, specifically referenced it in his findings of fact and conclusions of law, and that really is the disagreement here. We don't disagree about what the facts were. We really don't disagree about what the law is, but are the findings of fact that the court made, which are entitled to review for clear error, supportive of your de novo review for the sufficiency of the evidence? And I see I'm out of time. Thank you. Thank you. Thank you. Would you like a minute for response? May I, please? Yes, sir. Thank you so much. This, you know, I believe if we give the prosecutor's discretion on this as far as how many times he received or how many times he viewed without downloading, it is troublesome for a defense attorney. It was troublesome at this time for Mr. Zarn and myself. You know, you look at Kuczynski, we're talking 15,000 to 19,000 images. That wasn't counted at all because it's cash, because there was no control or dominion in control. The court focused on receiving it on the computer screen. Computer screen isn't physical media. If you unplug a computer screen and plug it into the wallet, it's just a screen. It doesn't have a brain. It's not a thumb drive or a hard drive or a floppy. And then finally, as far as the ex post facto argument, the penalty was less severe. And certainly there would not have been, obviously, as a defense attorney, a motion to dismiss if the government chose to do what we were wanting, which is consider at least something lesser like viewing, because the penalty was less severe. The guidelines take that into consideration. And was the viewing statute in effect at that time?  It was, Your Honor. It was in effect at the time you would have planned, but after the offense. Yes, it was after the offense, but at the time of trial or plea, we had two and a half months from October 8th when President Bush signed the law to December 29th roughly, I believe, was when the trial was. Counsel, how does that standard of review affect your argument on the sufficiency of evidence? I'm sorry, what was your question? How does the standard of review affect your argument on sufficiency of the evidence? We have to look at all the facts in the light most favorable to the government. I think you have to go to the knowing receipt, the first element. There was no knowing receipt because there was no dominion and control. Even if we look at the evidence in the light most favorable to the government as found by the judge as the trier fact? Because he focused on receipt on the computer screen itself, and there's no authority that says receipt on a computer screen is control or dominion. It has to be within the electronic media context like a thumb drive or a hard drive. Thank you very much. Okay, thank you very much. Thank you both for your helpful arguments. United States v. Zarn is now submitted for decision. The next case on the argument calendar this morning, United States v. Patrick. Thank you.
judges: Lasnik, Fletcher W. , Rawlinson